IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRUCE NEIL RICHARDS, ) | |
| ) | |
| Plaintiff, ) | Case No. CV 04-048-S-LMB |
| ) | |
| v. ) | |
| ) | ORDER |
| CITY OF RICHFIELD, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

Currently pending before the Court are Defendants' Motion to Dismiss (Docket No. 16), Plaintiff's Motion for Summary Judgment (Docket No. 37), and Defendants' Motion to Strike (Docket No. 46). Having carefully reviewed the record, considered oral arguments, and otherwise being finally advised, the Court enters the following Order.

**I.**

**BACKGROUND**

On or about October 21, 1999, a City of Richfield employee inspected Plaintiff's mobile home pursuant to City Ordinance Number 178, which provides for inspection before a mobile home can be placed in the City.[1]  *Richards Affidavit*, ¶ 6 (Docket No. 31, Att. 1); *Amended*

---

[1] Plaintiff's Affidavit lists the inspection date as October 21, 1999, but the exhibit referred to in the Affidavit shows September 20, 1999 as the inspection date. *Richards Affidavit*, Ex. A (Docket No. 31, Att. 1).

ORDER -1-

*Complaint*,[2] ¶ 5 (Docket No. 1).  This inspection noted several problems with the mobile home.  *Richards Affidavit*, Ex. A (Docket No. 31, Att. 1).

In February of 2000, Plaintiff submitted to the City of Richfield (the "City") a building permit application seeking to relocate the mobile home onto property owned by him within the City limits.  *Amended Complaint*, ¶ 3 (Docket No. 1).  On September 13, 2000, the City approved a permit subject to a favorable home inspection.  *Id.* at ¶ 4.  Plaintiff did not contact the City inspector to have him re-inspect the home.  *Riley Affidavit*, ¶ 6 (Docket No. 39, Att. 10).

On October 20, 2001, after his permit had already expired, Plaintiff attempted to bring the mobile home into the City.[3]  *Amended Complaint*, ¶ 8 (Docket No. 1); *Riley Affidavit*, ¶ 7 (Docket No. 39, Att. 10).  A City official stopped Plaintiff and allegedly told him that he could not bring the home into the City and that he would be subject to arrest if he did so.  *Richards Affidavit*, ¶ 7 (Docket No. 31, Att. 1); *Amended Complaint*, ¶ 8 (Docket No. 1).

Based on the City's refusal to provide a building permit and allow Plaintiff to move the mobile home onto his property, Plaintiff initiated this action against the City and five individuals on December 16, 2003 in the Fifth Judicial District of the State of Idaho.[4]  On January 23, 2004, Defendants removed this action to federal court.  *Notice of Removal* (Docket No. 1).  Plaintiff's Complaint alleges that Defendants violated his rights to procedural and substantive due process

---

[2]   The Amended Complaint is attached to the Notice of Removal at Docket No. 1.

[3]   Again, Plaintiff provides conflicting dates for the event.  His Complaint states that he attempted to move the home on October 20, 2001, *Amended Complaint*, ¶ 8 (Docket No. 1), but his Affidavit states that he attempted to move the home on September 30, 2000, *Richards Affidavit*, ¶ 2 (Docket No. 22).  At the June 22, 2005 hearing, counsel for each party agreed that October 20, 2001 is the date Plaintiff attempted to move the home.

[4]   Plaintiff filed a Complaint on December 16, 2003 and just one day later, on December 17, 2003, filed the Amended Complaint presently at issue.

ORDER -2-

and that their actions amounted to a taking under the Fifth Amendment.  *Amended Complaint* (Docket No. 1).  Plaintiff also seeks a declaratory judgment under state law that the City's ordinance is preempted by federal statute.  *Id.*

On November 15, 2004, Defendants moved both to dismiss the federal claims as time-barred and to remand the remaining state law claim.  *Motion to Dismiss*, p. 1 (Docket No. 16).  Plaintiff did not initially respond and, pursuant to District of Idaho Local Civil Rule 7.1(f), the Court granted the dismissal and remanded the remaining state law claim to state court.  *Orders* (Docket Nos. 19, 20).  Plaintiff filed a Motion to Set Aside the Court's Order (Docket No. 21), which the Court granted on February 8, 2005 (Docket No. 29).

On April 7, 2005, the Court entered another Order, providing that Defendants' Motion to Dismiss should be treated as a Motion for Summary Judgment and allowing supplemental briefing on the issues.  *Order* (Docket No. 36).  Plaintiff subsequently filed a Motion for Summary Judgment, arguing that federal law preempts Ordinance Number 178.  *Motion for Summary Judgment* (Docket No. 37).  The Court held a hearing on June 22, 2005, and the motions for summary judgment are now at issue.

## II.

### DEFENDANTS' MOTION TO STRIKE

Defendants have moved to strike as untimely a Memorandum (Docket No. 43) and Affidavit (Docket No. 44) filed by Plaintiff on May 30, 2005.  The Court agrees that these documents were filed over a month too late to be considered a timely supplemental response under the Court's April 7, 2005 Order, (*see* Docket No. 36), and two weeks too late to be considered a timely reply brief supporting Plaintiff's Motion for Summary Judgment, *see* D. Id.

ORDER -3-

L. Civ. R. 7.1(b)(3).  The Court, however, will consider these materials in ruling on the present motions because it finds that Defendants were not prejudiced by the late-filing.  Defendants could not have submitted a memorandum in response to Plaintiff's May 30, 2005 filings even if they had been timely because the Local Rules do not provide for sur-reply briefs.  Additionally, Defendants had three weeks to review Plaintiff's Memorandum and Affidavit in preparation for the June 22, 2005 summary judgment hearing.  For these reasons, Defendants' Motion to Strike is denied.

## III.

## MOTIONS FOR SUMMARY JUDGMENT

### A.  Standard of Law

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The United States Supreme Court has made it clear that, under Rule 56, summary judgment is required if the nonmoving party fails to make a showing sufficient to establish the existence of an element which is essential to his case and upon which he or she will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If the nonmoving party fails to make such a showing on any essential element of his case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id*. at 323.

Rule 56 provides that, in order to preclude entry of summary judgment, an issue must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue is "genuine" when there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial," *Hahn v. Sargent*, 523 F.2d 461, 463 (1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co., Inc.*, 391 U.S. 253, 289 (1968)), or when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Ninth Circuit cases are in accord. *See, e.g.*, *British Motor Car Distrib., Ltd. v. San Francisco Auto. Indus. Welfare Fund*, 882 F.2d 371 (9th Cir. 1989).

In ruling on summary judgment motions, the court does not resolve conflicting evidence with respect to disputed material facts, nor does it make credibility determinations. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). Moreover, all inferences must be drawn in the light most favorable to the nonmoving party. *Id.* at 631. As the Ninth Circuit Court of Appeals has stated, "[p]ut another way, if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *Id.*

In order to withstand a motion for summary judgment, the Ninth Circuit has held that a nonmoving party:

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when

>   the factual context makes the nonmoving party's claim
>   implausible.

*British Motor Car Distrib.,* 882 F.2d at 374 (citation omitted).  Moreover, the Ninth Circuit has held that where the moving party meets its initial burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must "produce 'specific facts showing that there remains a genuine factual issue for trial' and evidence 'significantly probative' as to any [material] fact claimed to be disputed."  *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (citing *Ruffin v. County of Los Angeles*, 607 F.2d 1276, 1280 (9th Cir. 1979)).

The Ninth Circuit Court of Appeals has acknowledged that in recent years the Supreme Court, "by clarifying what the nonmoving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment."  *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).  As the Ninth Circuit has expressly stated: "No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment."  *Id.*

In addressing the application of the "Summary Judgment Test," the Ninth Circuit has specifically explained that:

>   A "material" fact is one that is relevant to an element of a claim or defense
>   and whose existence might affect the outcome of the suit.  The materiality
>   of a fact is thus determined by the *substantive law* governing the claim or
>   defense.  Disputes over irrelevant or unnecessary facts will not preclude a
>   grant of summary judgment.

*T.W. Elec. Serv., Inc.,* 809 F.2d at 630 (citing *Anderson*, 477 U.S. at 248) (emphasis added).

## B. Defendants' Motion for Summary Judgment Based on the Statute of Limitations

Defendants argue that Plaintiff's federal claims are barred because he failed to file his

Complaint within the limitations period for 42 U.S.C. § 1983 actions.  *Defendants' Memorandum*, p. 2 (Docket No. 17).  In § 1983 actions, this Court applies the forum state's statute of limitations for personal injury actions.  *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 926 (9th Cir. 2004).  In Idaho, the limitations period for personal injury actions is two years from the date the cause of action accrues.  *Hallstrom v. Garden City*, 991 F.2d 1473, 1476 (1993) (citing Idaho Code § 5-219(4)).  "Although state law determines the length of the limitations period, federal law determines when a civil rights claim accrues."  *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153-54 (9th Cir. 2000).  "[A] claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."  *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).  In determining when an act occurs for limitations purposes, "the question is when the operative decision was made, not when the decision is carried out."  *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1059 (9th Cir. 2002).

      Plaintiff's Complaint alleges that "[a]s a direct result of the Defendants' failure to provide the ministerial approval of a building permit" and "refusal to allow [him] to place his mobile home on [his property]," he has been injured.  *Amended Complaint*, ¶¶ 9, 10 (Docket No. 1).  Thus, these actions by Defendants are the ones relevant to determine when Plaintiff's causes of action accrued.  The City approved a building permit, subject to a favorable home inspection, in September of 2000.  *Amended Complaint*, ¶ 4 (Docket No. 1).  Plaintiff initially obtained an inspection, *Richards Affidavit*, ¶ 6 & Ex. A (Docket No. 31, Att. 1), but never contacted the City inspector to have the home re-inspected, *Riley Affidavit*, ¶ 6 (Docket No. 39, Att. 10).[5]  Instead,

---

[5] Nothing in the record disputes Mr. Riley's statement that Plaintiff did not seek a follow-up inspection.

ORDER -7-

on October 20, 2001, Plaintiff attempted to bring the mobile home into the City and a City official blocked his attempt. *Amended Complaint*, ¶ 8 (Docket No. 1); *Riley Affidavit*, ¶ 7 (Docket No. 39, Att. 10). On this date, Plaintiff knew that Defendants would not allow him to place the manufactured home on his property. Indeed, Plaintiff alleges that Defendants threatened him with arrest if he attempted to move the home in the future. *Richards Affidavit*, ¶ 7 (Docket No. 31, Att. 1); *Amended Complaint*, ¶ 8 (Docket No. 1). Accordingly, October 20, 2001 is the operative moment when Plaintiff had "reason to know of the injury which is the basis of the action," *TwoRivers*, 174 F.3d at 991, and the date on which the limitations period commenced under federal law. Plaintiff did not file his Complaint until December 16, 2003, almost two months after October 21, 2003–the date the limitations period expired.

Plaintiff, however, argues that the limitations period has not yet expired because Defendants' "continued refusal to allow him to use his property constitutes a continuous chain of [tortious] activities" and the limitations period should therefore "not run prior to its cessation." *Plaintiff's Memorandum*, pp. 2, 4, 7 (Docket No. 31). Under controlling legal authority, the Court is required to look at when the "operative decision" occurred and "separate from the operative decision[] those inevitable consequences that are not separately actionable." *RK Ventures*, 307 F.3d at 1058. Here, the final, operative decision was made on October 20, 2001 when Defendants blocked Plaintiff from bringing his mobile home into the City.[6] Everything

---

[6] The operative decision may have occurred even earlier when the City approved a permit subject to favorable inspection. The Plaintiff's failure to seek re-inspection prior to moving the home caused the City to make a second decision to refuse entry of the home into the City. This second decision really just *enforced* the earlier decision that the mobile home could be moved only upon favorable inspection. *See RK Adventures*, 307 F.3d at 1059 (explaining that "the question is when the operative decision was made, not when the decision is carried out").

ORDER -8-

that occurred after that moment, including Plaintiff's inability to move the mobile home into the City and the monetary losses allegedly stemming from this inability, was merely part of the consequences of the October 20, 2001 decision.[7]

Although federal law controls the determination of when a cause of action accrues, the Court notes that even the Idaho case cited by Plaintiff, *Curtis v. Firth*, recognizes the difference between continued unlawful acts and continued ill effects from those acts. 123 Idaho 598, 603 (1993). Plaintiff has pointed only to ill effects stemming from earlier allegedly unlawful acts. He has not alleged any "discrete acts" by Defendants after October 20, 2001 that amount to a constitutional violation. *See RK Adventures*, 307 F.3d at 1058 (explaining that there must be "discrete acts" that would violate the Constitution that occurred during the limitations period). While the record contains one letter from Plaintiff's counsel to Defendants' counsel in October of 2002 setting forth the position adopted by Plaintiff in this action, this letter does not reveal any additional *act* by Defendants after October 20, 2001 that might violate the Constitution. *Hodges Affidavit,* Ex. A (Docket No. 24). Plaintiff does not claim that he sought re-inspection or

---

[7] Plaintiff additionally argues that his "lost use of property . . . constitutes a *continued* unlawful taking." *Plaintiff's Memorandum*, p. 7 (Docket No. 31) (emphasis added). The Court disagrees. October 20, 2001 is also the date on which the City's decision regarding Plaintiff's use of the property became final for purposes of his takings claim and the latest date on which the limitations period commenced. *See Daniel v. City of Santa Barbara*, 288 F.3d 375, 381 (9th Cir. 2002) (explaining that a regulatory taking challenge becomes ripe when, among other things, the action alleged to constitute the taking is a final decision regarding how the owner will be allowed to use his property).

Moreover, Defendants describe Plaintiff's claim as a "regulatory taking" and Plaintiff has not disputed this characterization. *Defendants' Memorandum*, p. 6 (Docket No. 39). "Facial regulatory takings claims accrue on either: (1) the date compensation is denied in state courts; or (2) the date the ordinance is passed if resort to state courts is futile." *Cashman v. City of Cotati*, 374 F.3d 887, 892 (9th Cir. 2004). Plaintiff did not seek compensation in state court, and Ordinance 178 was passed on June 10, 1996–over seven years before Plaintiff filed the instant action. *Hodges Affidavit*, Ex. B (Docket No. 24).

ORDER -9-

the issuance of a building permit after October 20, 2001, nor does he point to any later decision by the City denying a request to move the mobile home.[8]

In short, the limitations period commenced, at the latest, on October 20, 2001 when a City official refused to allow Plaintiff to move his mobile home into the City. Because Plaintiff did not file the present action until December 16, 2003, the first three claims in his Complaint brought under § 1983 are barred by the applicable two-year statute of limitations. Additionally, because no genuine issues of material fact exist, summary judgment in favor of Defendants is appropriate. Accordingly, the Court grants Defendants' Motion for Summary Judgment on claims one, two and three.

### C.     Remand of State Law Claim

The only remaining claim is Plaintiff's request for declaratory relief under Idaho's declaratory judgment statute. This Court has discretion to decline supplemental jurisdiction over a state law claim if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has stated, and the Ninth Circuit Court of Appeals has often repeated, that "'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining

---

[8] Plaintiff also claims that he was required to attend between 15 and 17 meetings with the City and argues that each attendance "constitutes a continuing wrong." *Plaintiff's Response Memorandum*, p. 8 (Docket No. 43); *see also Richards Affidavit*, ¶ 4 (Docket No. 44). However, Plaintiff provided only one date for any of these meetings. Attached to Plaintiff's Affidavit is a copy of meeting minutes from August 14, 2000–*prior* to the October 20, 2001 commencement of the statute of limitations. *Richards Affidavit*, Ex. C (Docket No. 44). Additionally, Plaintiff states in a Memorandum that he "had to attend some seventeen (17) meetings . . . *before* he decided that he had waited long enough" and attempted to move the mobile home onto his property. *Plaintiff's Memorandum*, p. 2 (Docket No. 31) (emphasis added). These time references demonstrate that the meetings occurred before Plaintiff attempted to move his mobile home on October 20, 2001. Thus, the acts did not occur within the statutory period.

state-law claims.'" *Aeri v. Varian Assocs., Inc*., 114 F.3d 999, 1001 (9th Cir. 1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1998)).

Although the Court disagrees with Defendants' assertion that the declaratory judgment claim raises issues solely relating to the interpretation of state law, it declines to exercise its discretion to consider Plaintiff's state law claim. *See Defendants' Memorandum*, p. 4 (Docket No. 17). Plaintiff's claim for declaratory relief involves issues of federal statutory preemption, but it is brought under Idaho's declaratory judgment statute, a statute the state court is in a better position to apply. Additionally, the state courthouse is geographically closer to the parties and is a more convenient place for them to attend hearings than is the federal courthouse in Boise. Thus, declining jurisdiction "serves the objectives of economy, convenience and fairness to the parties, and comity." *Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maint., Inc*., 333 F.3d 923, 925 (9th Cir. 2003). For these reasons, the Court remands the remaining state law claim to the Fifth Judicial District for the State of Idaho. Because the Court has granted Defendants summary judgment on the first three claims and remanded the only remaining claim, Plaintiff's Motion for Summary Judgment is now moot.

## IV.

## ORDER

Accordingly, IT IS HEREBY ORDERED:

1. Defendants' Motion to Strike (Docket No. 46) is DENIED.

2. Defendants' Motion to Dismiss (Docket No. 16) is GRANTED.

3. Plaintiff's Motion for Summary Judgment (Docket No. 37) is DENIED as MOOT.

4. The remaining state law claim in this action is REMANDED to the Fifth Judicial District of the State of Idaho, in and for the County of Lincoln.



DATED: **July 18, 2005**.

_____
Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

ORDER -12-